**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Finch Therapeutics Group, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 26-10409 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: Sept. 1, 2026 at 10:00 a.m. (ET)**<br>**Objection Deadline: Aug. 18, 2026 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019**

The debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving a proposed Settlement and Release Agreement (the "Settlement Agreement") between the Debtors and Genetix Biotherapeutics, Inc. (f/k/a Bluebird Bio, Inc.) ("Genetix" and, together with the Debtors, the "Parties"), and respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these chapter 11 cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Finch Therapeutics Group, Inc. (3558); Finch Therapeutics, Inc. (3711); Finch Therapeutics Holdings LLC (0727); and Finch Research and Development LLC (9205). The Debtors' service address is 75 State Street, Suite 100, Boston, MA 02109.

2. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The legal predicates for the relief sought herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Bankruptcy Rule 9019.

## BACKGROUND

### A. General Background

4. On March 22, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

5. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

6. Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these chapter 11 cases, is set forth in the *Declaration of Matthew P. Blischak, Chief Executive Officer, Secretary, and President of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day*

*Pleadings* [Docket No. 9] (the "First Day Declaration"),[2] which is incorporated herein by reference.

**B. THE SUBLEASE AND PROPOSED SETTLEMENT**

7. Prior to the Petition Date, Debtor Finch Therapeutics, Inc. ("FTI"), as tenant, entered into a Lease Agreement, dated as of August 3, 2021 (as the same may have been amended or modified from time to time, the "Prime Lease"),[3] with Hood Park, LLC ("Hood Park"), as landlord, pursuant to which FTI leased from Hood Park approximately 61,139 square feet of space located at 100 Hood Park Drive, Charlestown, Massachusetts (the "Premises").

8. FTI and Genetix subsequently entered into a Sublease, dated as of October 31, 2022 (as the same may have been amended or modified from time to time, the "Sublease"), pursuant to which Genetix subleased from FTI approximately 42,162 square feet of space located on the second floor of the Premises (the "Subleased Premises") in exchange for certain monthly rental payments and other consideration and payment obligations (collectively, "Subtenant Rent") payable by Genetix to FTI as set forth in more detail in the Sublease.

9. The Sublease expired by its terms on December 15, 2025 (the "Sublease Expiration Date") and the term of the Sublease was not extended by any agreement of the Parties. Notwithstanding the expiration of the Sublease, Genetix did not fully vacate the Subleased Premises until more than three months after the Sublease Expiration Date.

10. The Debtors made a demand on Genetix for payment of all Subtenant Rent and certain additional holdover rent for the period from and after the Sublease Expiration Date during

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3] Pursuant to an order entered by the Court on May 27, 2026 [Docket No. 203], the Prime Lease was rejected by the Debtors effective as of March 31, 2026.

which Genetix continued to occupy the Subleased Premises, and Genetix has disputed the allegations in the demand and its liability for such Subtenant Rent and additional holdover rent payment.

11. The Parties engaged in good-faith, arm's-length negotiations and, to avoid further expense and litigation risk, the Parties reached a settlement of their disputes with respect to the Sublease and Subtenant Rent as embodied in the Settlement Agreement, a copy of which is attached as **Annex 1** to the Proposed Order.

12. Specifically, under the Settlement Agreement, Genetix has agreed to pay to the Debtors the sum of $325,000.00 within three (3) business days following entry of an order from this Court approving the Settlement Agreement, and the Parties have agreed to exchange mutual limited releases of claims and causes of action in connection with, related to, or arising out of the Sublease, the Prime Lease, the Premises, or the Subleased Premises.

13. The Debtors believe that entry into the Settlement Agreement is reasonable and appropriate, in the best interest of their estates, and avoids the need for litigation that would be costly, potentially protracted, and uncertain in outcome.

## RELIEF REQUESTED

14. By this Motion, the Debtors request that the Court enter an order, substantially in the form of the Proposed Order attached hereto, approving the Settlement Agreement and authorizing the Parties to take such actions as are necessary or appropriate to effectuate the terms thereof.

## BASIS FOR RELIEF REQUESTED

15. Bankruptcy Rule 9019(a) provides that, "[o]n the trustee's [or debtor in possession's] motion and after notice and a hearing, the court may approve a compromise or

settlement." Fed. R. Bankr. P. 9019(a). Settlements are strongly favored in bankruptcy because they minimize litigation, expedite the administration of the estate, and provide for the efficient resolution of bankruptcy cases. *See Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). To achieve these objectives, Bankruptcy Rule 9019(a) empowers the Court to approve settlements after notice and a hearing, and sections 105(a) and 363 of the Bankruptcy Code authorize the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

16. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; accord *In re Nutraquest, Inc.*, 434 F.3d at 644 (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor).

17. Moreover, settlements should be approved if they fall above the lowest point in the range of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598

(E.D. Pa. 1992); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); *see also In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation were pursued. Instead, courts should approve settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *In re Tech. for Energy Corp.*, 56 B.R. 605, 608 (Bankr. N.D. Ohio 1985).

18. A consideration of the applicable *Martin* factors demonstrates that the Settlement Agreement is a fair and equitable compromise and falls well within the range of reasonableness. The Debtors submit that there is a bona fide dispute as to the extent of Genetix's liability under the Sublease. While the Debtors believe they would be successful in litigation, there are inherent uncertainties as to the outcome of any such litigation and as to the amount of any judgment that may be awarded. There is no assurance that the Debtors would achieve a better result in litigation than the one set forth in the Settlement Agreement, particularly considering the time and cost to the estates that would be associated with litigation.

19. The Debtors and their professionals have investigated the matters underlying the Parties' disputes, evaluated the arguments and defenses asserted by Genetix, and negotiated a reasonable resolution that avoids the costs, risks, and delay attendant to litigation. The Settlement Agreement provides for a $325,000 cash payment to the Debtors that will enhance the value of the estates for the benefit of all stakeholders, and the Debtors believe the benefits of the Settlement Agreement exceed any net benefit that the Debtors could otherwise potentially obtain given the uncertainties, delays, and costs with any litigation.

20. For these reasons, the Settlement Agreement is fair, reasonable, and in the best interest of the estates and all stakeholders. The Settlement Agreement is based on the Debtors' exercise of sound business judgment, falls well above the "lowest point in the range of reasonableness," and should be approved by the Court.

**NOTICE**

21. Notice of this Motion has been or will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) Genetix; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

**RESERVATION OF RIGHTS**

22. Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver or limitation

of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

**NO PRIOR REQUEST**

23. No prior request for the relief requested in this Motion has been made to this Court or to any other court.

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order (i) authorizing and approving the Settlement Agreement, and (ii) granting the Debtors such other and further relief as is just and equitable.

Dated: August 4, 2026
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Robert A. Weber*
Robert A. Weber (No. 4013)
Alison R. Maser (No. 7430)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
E-mail: weber@chipmanbrown.com
maser@chipmanbrown.com

-and-

**CHIPMAN BROWN CICERO & COLE, LLP**
Daniel G. Egan (admitted *pro hac vice*)
420 Lexington Avenue, Suite 442
New York, New York 91470
Telephone: (646) 741-5529
E-mail: egan@chipmanbrown.com

-and-

**ROPES & GRAY LLP**
Cristine Pirro Schwarzman (admitted *pro hac vice*)
Cameron J. Cavalier (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
E-mail: cristine.schwarzman@ropesgray.com
cameron.cavalier@ropesgray.com

*Counsel to the Debtors and Debtors in Possession*